for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. Be seated. All right, Mr. Littlehill, whenever you're ready. Good morning. May it please the Court. The issue in this case is whether a defendant may render a knowing, involuntary guilty plea when his attorney provides misadvice on a crucial aspect of his case. Under this Court's existing jurisprudence, the answer to that question is no. That plea is invalid and that defendant has been deprived of his Sixth Amendment right to counsel. That is exactly what happened in this case. Jackson asked his attorney whether he could present evidence of intoxication at trial and his attorney wrongfully told him no. That advice fell below an objective standard of reasonableness and prejudice, Mr. Jackson, in a variety of ways. Counsel must inform his client of the advantages and disadvantages of a plea agreement in order to assist the defendant's evaluation of his options. Here, after receiving the misadvice from counsel, it was impossible for Mr. Jackson to rationally weigh the advantages of going to trial versus the advantages of pleading guilty. For this reason alone, we submit that Mr. Jackson is entitled to relief in this case. There's another major problem, however, with the advice provided by trial counsel in this case, and that's the timing of that misadvice. There was no motions practice in this case, nor was there trial. Therefore, the only point of time at which Mr. Jackson might have been aided by his counsel was by weighing his options and evaluating this particular plea agreement. But he was unable to do so. This type of misadvice, that is misadvice concerning a crucial aspect of the case, provided at a critical stage of proceedings, about which the defendant specifically asked about, amounts to an effective denial of counsel. And we have a presumption of prejudice in this case. Was the death penalty an option at the time of his plea? Well, at the time of his plea, yes, Your Honor. Mr. Jackson faced a possible death sentence for the first degree murder. The reason I'm asking that is I was looking at the transcript on page 36 of the joint appendix that says from the government's counsel, we have received a directive from the Attorney General not to seek the death penalty. And I was just wondering if that was still an option or a consideration. Bottom of page 36, the last line. Yes, Your Honor. I see that. And I, too, question that statement. However, government counsel on this appeal has represented that the death penalty was, in fact, on the table. And I'm not in a position to disagree with that statement. We would submit, however, that whether or not the death penalty was on the table is irrelevant for this Court's analysis in this case. And that's because in a variety of circumstances, an outcome-based prejudice test simply does not work. Take, for instance, a case in which a defendant asks his attorney to introduce perjured testimony. Now, that perjured testimony may well help him win at trial. But the Supreme Court has said that that doesn't constitute prejudice under the Sixth Amendment. What the Court looks for is whether a defendant has been deprived of a constitutional right. And in this case, my client was deprived of his constitutional right to make an informed decision whether to plead guilty. In determining whether there was advice on the whole matter of voluntary intoxication. And the advice was to the effect that voluntary intoxication was not a defense to specific intent crimes such as first-degree murder wouldn't have been a defense to a second-degree murder charge either. Well, Your Honor, I would disagree with your premise. I don't think there was any advice on that point. I don't think counsel ever said to my client, yes, this is a possibility. However, it's a bad idea. There was never that conversation. I think by looking at the testimony, it's clear that it's voluntary intoxication is not a defense to first or second-degree murder. Isn't that correct? To second-degree murder, I would say that's correct, Your Honor. The first-degree murder, we submit that voluntary intoxication eliminates the government's ability to prove the specific intent required to carry out the offense under federal law. Second-degree murder is still death eligible. Second-degree murder as an academic matter, I concede it's death eligible. However, under the facts of this particular case, we submit that it is not a death penalty offense. Namely, in United States v. Leidy, this court has said in order to be punished to a death sentence, the government needs to show that a defendant acted with intent. And that the government simply cannot do in this case if the jury accepts our intoxication defense and finds the defendant not guilty of first-degree murder, but rather guilty of second-degree murder. When you say it's an academic matter, do you mean by that there are a couple of Court of Appeals opinions out there that say or suggest that it's possible, but there's never been a death penalty sustained on a second-degree murder conviction? That's a very interesting point, Your Honor. And I have not been able to find an instance in which that has taken place. Let me ask, as I understand it, this case was initially referred to a magistrate who had asked the government for a response to the habeas petition and then all of a sudden the district judge ruled before the government had filed a response. Can you tell me what's going on? Chief Judge Traxler, I wish I could. I don't have a good answer for that. The magistrate judge did order a briefing scheduled from the government. And in the interim, when I suppose the government was working on that motion, the district court went ahead and filed its opinion. I don't know what was driving the district court's decision-making process, nor do I know the precise reasons why the district court felt necessary to dispose of Mr. Jackson's motion without a hearing or without at least hearing from the government. Of course, the rules permit that. Oh, of course. But if the record plainly shows that the defendant is not entitled to relief. And in this case, we submit that that is just not the case. Judge Wilkerson, to go back to your point, at JA130 there is a mitigation memorandum submitted by trial counsel to the government. And in that memorandum, which trial counsel said is being provided for use in plea negotiations, trial counsel talks about the fact that Jackson was intoxicated during the defense in question. But on page 134, he doesn't say to the government, look, government, you're going to have a difficult time proving intent in this case. My client did not have his faculties. He was acting in a bizarre manner. Rather, he merely talked about mitigating factors at sentence. And this goes to support Mr. Jackson's understanding of what happened. He says that his trial counsel never informed him that the government would have to prove this element at trial. And in our opinion, this mitigation memorandum fully supports that view. So I think even if the court were to consider a remedy in this case, we feel as though the mitigation memo itself provides objective evidence in support of our arguments that Mr. Jackson was given improper advice. Actually, to get back to Chief Judge Tractor's question, if you were to persuade us that there was error here, do you agree that the most you'd be entitled to would be vacate, remand to give the government an opportunity to respond and if necessary, conduct a hearing? Perhaps an evidentiary hearing, one would suppose. Well, Judge Davis, I think that an evidentiary hearing is certainly an appropriate step, and it's certainly in this court's power to order such a hearing. However, we don't necessarily think that there's reason in this case to hold a hearing. And as I said, the evidentiary memo I just talked about, the mitigation memo rather, supports Mr. Jackson's argument. There's no evidence in the record, to the contrary, that he would not have gone to trial but for counsel's misadvice. Furthermore, the Supreme Court recently in Lafler against Cooper said the remedy must neutralize the taint. And in this case, we submit that the taint was an effective denial of counsel. And in such circumstances, prejudice is presumed, and we submit that there's no reason to have a hearing. Now, this court recently, earlier this year in fact, in United States against Fisher, ruled effectively just that. When there was no hearing below and on appeal, this court found prejudice and vacated and remanded for a new trial. There was no hearing ordered in that case and we feel as though that's the appropriate response in this case. You want a new trial? With a death penalty still on the table? Yes, we do, Your Honor. We feel as though Mr. Jackson, I should say, feels as though he just wants to be put back in the position he would have been but for this misadvice. Would you agree that they could seek the death penalty if you were granted a new trial? Or granted a trial? The state or the federal government, Your Honor? The state. The state could. You agree with that? I have no basis in the record from the government's representations to disagree with that statement, Your Honor. You've spoken like a true lawyer. Does the state have concurrent jurisdiction here? That's a good question too, Your Honor. I don't know a solid answer to that. I suppose there's a decent... Where was this again? This was on the, was this in the George Washington? Blue Ridge Parkway. Yes, Your Honor. Under Hill v. Lockhart, the test for prejudice is an objective one. Why would anyone want to go to trial on these facts? The facts here are perfectly horrendous and when you put before a jury, voluntary intoxication defenses are not the kinds of things that juries are likely to buy because they really don't go to guilt or innocence. There's no question in terms of who committed the offense. Juries are not generally sympathetic to them. The question under Hill v. Lockhart is whether objectively he would have wanted to go to trial and why would anybody, in order to presume prejudice, that's a question we have to ask. When you read what happened to Floyd and you read what... and the fact that even after he recognized that Floyd was not his daughter and continued to throw rocks and things at her which multiplied her already grievous injuries and he was shooting at the rescue vehicle and his defense was that he was enraged over what had happened to his daughter but he continued to do what he was doing even after he recognized that Floyd was not his daughter. I can't imagine a case that would be likely to meet with less sympathy than the one here before us. The facts are perfectly horrendous. All these people were doing was going what young couples often do, going to an overpass or an outlet on the Blue Ridge Parkway and for that one person loses his life and another person is badly mauled. We have to indicate we have to ask ourselves whether somebody would want to go to trial under a death eligible offense. As I read the Julian decision the second degree murder is a death eligible offense. You may regard it as a theoretical matter that the jury wouldn't grant the death eligible. The problem counsel face and sometimes it's not ineffective assistance of counsel when you're stuck with a perfectly horrible case which is what counsel had. Trying to make the best of an extremely bad situation. I have a couple of responses. I don't think we need to get that far in this case. That's because under Hill the long-standing test for determining the validity of a guilty plea is whether that plea represents a voluntary and intelligent choice among alternatives. In the O'Toole case, this court said it was a first degree murder case and his second degree murder. That's a good result in our view. However, the court said it's beside the point whether or not counsel was effective in getting that. The point was that this is a structural problem. That goes to the performance prong perhaps but the question is would a reasonable person have wanted to go to trial? The prosecution is not going to simply drop the first and second degree murder charges. It's not going to proceed on a manslaughter theory. You can be sure of that and the jury is probably going to be instructed that voluntary intoxication is not a defense to a specific intent crime to first or second degree murder. The question is given these facts, given these perfectly horrendous set of facts and given the fact that a first and second degree murder charge that the jury is going to be instructed that voluntary intoxication is not a defense and given the fact that a second degree murder charge under what I think is the plain language of the federal statute and the 11th Circuit's Julian decision is going to be death eligible. The question is at the end of the day not whether what this individual would want but under Hill v. Lockhart whether an objectively reasonable person given the lay of the land here would want not to try to negotiate a different bargain or whatever but would want to go to trial. Well I think your honor that objective standard has to be applied looking at the particular defendant in this case. And in this case it's a 60 year old defendant. He's never been in trouble before. He's never been violent before and he just wants a chance to get out of prison before he dies. And I think looking at it from that perspective it's certainly reasonable for a 60 year old defendant to want to get out of jail before he dies. Whether or not he faces a very difficult burden at trial is a question for the jury in our opinion. No it's a question of whether a person of any age given what he did to these two young people would have wanted to proceed to trial on these facts. You know and counsel is entirely taking the fact you know there's a Western District of Virginia jury and they're going to look at these facts and prosecution it's a death eligible offense. I don't know how you can say a reasonable person would want to go to trial on this case. That's what the prejudice prong of Hill v. Lockhart poses as the question. Yes your honor but this court has dealt with cases similar to this one in a different way than the Supreme Court handled Hill. And that is this court's prerogative because Hill isn't the only benchmark by which a defendant could establish Sixth Amendment prejudice. In cases such as Villa and Folks and Tice this court said that we can't tell whether or not he would have won a trial or we can't tell ultimately whether you would get a different punishment other than a death penalty. But we can tell that the defendant was deprived of his decision of whether to plead guilty or not. And that's the harm in this case. So our harm your honor rather than look under Hill. But that's not the way the Supreme Court poses the question. The Supreme Court poses the question not on the specific defendant but on whether a reasonable defendant would wish to go to trial. I mean you can read the decision. Yes your honor and I fully agree with Hill's standard but our submission here is that even if Judge Wilkinson you don't buy our argument under Hill. We have other arguments under the chronic line of cases that say there was just a fundamental breakdown in this case of the adversarial proceeding. As I said earlier there was no trial. There was no motions practice. So we're wondering when our client was provided any sort of legal assistance. And we can't find it in this record. Thank you. Please court good morning. My name is Tony Giorno. I'm an assistant United States attorney and I'm here on behalf of the government in this case. In looking at the briefs in this case I was perhaps a little perplexed by whether or not we were arguing the same case here as far as what was Mr. Jackson claiming in his petition. What did Judge Wilson rule on in his opinion in the case. And as a starting point we take Mr. Jackson's and this is at the Joint Appendix at page 82. What Mr. Jackson claimed in his petition in which was decided upon by Judge Wilson was Jackson's claim that counsel rendered ineffective assistance when failing to raise a defense of mental impairment constituting manslaughter. Constituting manslaughter. And that failure to raise a defense constituting manslaughter appears throughout Jackson's petition. For example page 6 of the memorandum the Joint Appendix at page 109. Counsel dropped the ball when failing to present an affirmative defense in a jury trial. This could have resulted in a lesser included offense of manslaughter. Joint Appendix 116. Sentence based on counsel error. When in fact the defendant was guilty only of manslaughter. Joint Appendix 118. The movement had a defense capable of resulting in a manslaughter in a jury trial. Hence again the page, Joint Appendix page 119. A verdict of manslaughter would have been probable. That was Mr. Jackson's claim. That was what he was seeking in this case. And that was the claim that Judge Wilson addressed squarely in his opinion. In fact Judge Wilson, this Joint Appendix page 138 frames the issue thusly. Jackson claims his counsel misadvised him concerning the viability of an intoxication defense capable of reducing the homicide from murder to manslaughter. He contends that he was intoxicated to such an extent that a verdict of manslaughter would have been probable. And that was the basis of the judge's opinion. Is manslaughter a specific intent crime? It is not, Your Honor. Right. So if he can negate specific intent then he can make his argument for manslaughter. No, Your Honor. It is not. Manslaughter is not a specific intent crime. Right. Manslaughter can be inferred from recklessness. But it I think that the law, as I understand it, is that manslaughter. It might be useful in attacking the premeditation prong of first degree murder, but it is not going to get him down to anything lesser than second degree murder. So he cannot get below... You're not going to proceed to trial on a manslaughter. I mean you're not going to drop the first and second degree murder charges. No, sir. Not at all. I mean the point is those are going to go before the jury. Absolutely, Your Honor. And... Go ahead, Bill. I was going to say if it's a lesser included offense, the judge believes that, you don't have a choice about whether or not manslaughter gets admitted to the jury. There is on these facts, and if you look at counsel, at what Jackson is saying in this case, he never denies he intended to shoot somebody. In the statement... You didn't intend to shoot and still be guilty of manslaughter, it's just you're doing it in sudden heat and passion based upon a sufficient legal provocation. Your Honor, I would submit to the court that on the facts in this case, the stipulated facts, there would be no basis for a district court judge... But you don't mean to suggest that you can rely on stipulated facts of a tainted guilty plea. It's a small point, but you understand he's here challenging the guilty plea, and so you can't bootstrap the legitimacy of the plea by the stipulated facts. There's no issue before us. But I think that you still have to be mindful of the facts, Judge Davis, about what Mr. Jackson was facing at the time. He stipulated to those facts, which represented to the district court. He stipulated as a part of the guilty plea proceeding, and now he's here saying the guilty plea was not knowing, intelligent, and voluntary on account of defective advice from my lawyer. If we can, and I appreciate fully your description, and certainly the district court seemed unquestionably to take Mr. Jackson's pro se pleading at face value, but don't you agree that this court and the Supreme Court for decades and decades have said we construe pro se pleadings in a friendly manner, sympathetically construed, so even if he can't reach manslaughter, second degree is still better than first. Second degree is better than first, but it still leaves a death penalty on the table, Judge Davis. But the point is, he could have avoided first degree. Even you agree that voluntary intoxication, if accepted by the jury, as negating premeditation, is no longer a first degree case. I agree with that, Judge Davis. And theoretically, you could get a judgment of acquittal on first degree at the close of the government's case. If a clever defense lawyer is successful in getting into the record all the evidence about intoxication. I've never seen that happen, Judge Davis. Given the government's evidence in this case, which we've recited here for you, the evidence of what he did to these people, his own statement he made to the police afterwards. He said, I'm crazy. I did it because I'm crazy. That's among the things he said. After basically telling them that he sat around that day, that he had gone up in the park, he was mad at his son-in-law, Mr. Sanchez, because Mr. Sanchez had been messing with his daughter, words to that effect. Is that in the stipulated facts? It is, Your Honor. That he sat around and worried about her. Yes, Your Honor. He had the gun. He went up in the parkway looking for Mr. Sanchez because he thought Mr. Sanchez and his son-in-law had been messing with his daughter. I'm not sure if I can point that to the court. The point is, when you go to trial, the case is going to be submitted to the jury on a first-degree murder charge. It's going to be submitted to the jury on a second-degree murder charge, and it may be submitted to the jury on a manslaughter charge, as I understand it, is the lesser included. Is that correct? Theoretically, Judge Wilkinson, yes, as far as the manslaughter part. On these facts, his best defense was that I was intoxicated, and that is simply not sufficient to get to the manslaughter. The question is, what basis would the jury have to return a manslaughter? It's certainly going to be submitted to the jury on a first-degree and second-degree murder charge. Absolutely, Your Honor. Those are both death-eligible, and the jury is going to be instructed that voluntary intoxication is not a defense to these two charges, is it not? That's correct, Your Honor. You're going to get an instruction to that effect. That's correct, Your Honor. Essentially, the lawyer would have been leaving the client dead in the water. That's certainly my perspective, Judge Wilkinson. If you look at the Hill v. Lockhart test, which, of course, has not been changed by the recent Supreme Court jurisprudence, as I understand it, is an objective test, and what he has to establish is a reasonable probability that the defendant would not have pled guilty and would have insisted on going to a trial on these facts. The evidence that existed at the time of the play was just very overwhelming against Mr. Jackson. Has the Federal Court of Appeals ever affirmed a death sentence for second-degree murder? Yes, Your Honor, it has. Which case was that? That was the case of... Fine. I know it's here, Your Honor. I know it's here. But there's at least one? Are there more than one? Is there more than one? Yes. In fact, there was... This was the United States v. Jackson's Fourth Circuit case. That's a 924J. In that particular case, Mr. Jackson had pled guilty in state court to second-degree murder and got a 30-year sentence, as I recall. And the Federal Government charged him with a 924J, among other things, for using the firearm to commit murder under 1111. And he, in fact, received a death penalty. That was the case where he... And the jury found him not guilty of first degree and guilty of second degree. No, what happened was... Well, see, my question is, has a federal appellate court ever affirmed a death sentence when you have a jury verdict specifically on second-degree murder? I've not found one with a second-degree murder with a jury. But in Jackson v. Judge Davis, he was convicted only of second-degree murder in state court. And what happened is the Federal Government... I guess they weren't satisfied with the 30-year sentence he got in state court. They then brought this related charge... I understand he got convicted of second-degree murder in state court, but his federal conviction was for first-degree murder. No, Your Honor, it wasn't. It wasn't? It was not. He was not charged with first-degree murder in that case. What was he charged with? He was charged with, among other things, a 924-J. So he wasn't charged with federal murder? He was not charged with federal murder. And how did the district court instruct the jury in that case? I can't answer that. All I know is that they had... But what they had... What I'm trying to get at, just so that I'm clear, I'm trying to get at, is there a case anywhere in this country since 1976... Of course, the Federal Death Penalty was much later than that, where a federal death sentence was affirmed by a circuit court where the jury was instructed and specifically found the defendant guilty of second-degree murder only. So if you have one of those 924 or 944 counts, you'd have to look at the instructions. How did the judge instruct the jury with regard to the death, with regard to the degree of murder and what the I mean, I think you agree with that. You don't let the jury impose the death penalty just because somebody was convicted of 944, resulting in death, any more than you would permit the death sentence in a RICO case or a 1959 case. You have to instruct on the degree of murder in every case in which the jury is being asked to Do you not agree with that? Yes, Your Honor, but perhaps where I perhaps disagree with you, Your Honor, is the 924J as I understand it, is a death-eligible offense in and of itself. Right, which requires the district court to instruct the jury on the degree of homicide resulting from the 924J offense. What it says is if the defendant is convicted of murder as defined in section 18 U.S.C. 1111. Which is first degree and second degree. Correct. So we're in agreement. He's going to instruct on the elements of what is it, 944, the 924 offense. That's what the basic instruction is going to be. It's going to be on those elements, isn't it? Yes, it is. All right, and even if we get into questions of degree, of first or second degree, in Yolkakwe with my good colleague, we were assuming that he was only going to be convicted of second degree. But that assumption seems to me very, very speculative given these facts. I mean, the voluntary intoxication defense that supposedly is the linchpin of the case breaks down when he is fully in possession of his senses to the extent that he knows that Floyd is not his daughter, that there's no question of sexual molestation of his daughter, that a rescue team is trying to come and rescue these people from death. I mean, let's get real. Let's get into the practical nitty-gritty of how that case is going to come. We can debate the theory of first degree murder and second degree murder, but it's those facts that are going to be before the jury. And under Hill v. Lockhart, what defendant is going to want to go to trial with this case? It's one of the worst I've ever seen. One person shot, another person badly mauled. Two people, no provocation. Two people engaged in a perfectly innocent springtime activity, recreational activity, which they pay for it by being maimed and with their life. What's the closing argument in that case going to be? It's going to be lethal from the standpoint of the defendant. And there is a chance with which most defendants don't like to gamble. And if this lawyer had let this defendant go to trial and this defendant had received the death penalty, there would be so many claims of ineffective assistance of counsel that you wouldn't believe it. He would have been, he had a bad case. And he was going to be clobbered with an ineffective assistance of counsel claim no matter what he did. But it isn't his fault. It's the problem with the case. It's a horrible case. You can't blame the lawyer for the case. I don't disagree with that analysis at all, Judge Wilkinson. That's exactly what we had at the time. I was the prosecutor on the case. I don't disagree with that analysis at all. You do wish you had a chance to make that argument to Judge Wilson, don't you? It would have been helpful, but I felt that looking at Judge Wilson's analysis it was certainly defensible, Judge Davis. And I felt like it was something I should come up with given the type of analysis Judge Wilkinson has expressed, given what we've put in our brief. This was an absolutely horrific case. Is he gambling with the death penalty? And again I would point you to the language I've pointed to your adversary where the government told the judge we've received a directive from the Attorney General not to seek the death penalty. The reason for that, Judge Traxler, I can give you the background on that because again I was involved in that. Is that what he said? You agree that's what he told the judge that the Attorney General has said don't seek the death penalty. And the reason for that, Judge Traxler, do you agree? I do, Your Honor. I do. But it was predicated on the fact that the government had worked out, if you look at the language of the plea agreement, says the government. Wait, I didn't hear that. If you look at the language of the plea agreement, the plea agreement says that we're agreeing to these life sentences, but that's, it's going to be up to the Attorney General to decide. And obviously you go to the Attorney General and say we've worked this out, we've laid all these different circumstances out. There is, it was a This was not the result of the Attorney General not giving you a pre-authorization to seek the death penalty? No, sir, not at all. So the death penalty would have been on the table? Yes, sir. Had the plea agreement been rescinded? Correct. Would we have gone back to square one? Correct. Correct. That's exactly how this case came to be. And then, Judge Davis, you'd asked a question before about my time is running low here. You'd asked a question about whether the state had an option. There was, in fact, concurrent jurisdiction because it happened on Blue Ridge Parkway. We had several meetings with the, this is not on the record, but we had meetings with the Augusta County authorities about whether the Commonwealth Attorney should seek it, whether we should pursue it, and we elected to. Now just explain to us in very straightforward terms why, if the guilty plea is rescinded, the death penalty remains in play? The death penalty remains in play because the predicate for taking it off the table is the fact that Mr. Jackson had agreed to a sentence of life imprisonment. And that was, to us, that was, any time you go through a case like this. And if he was not going to agree to a sentence of life imprisonment, then the death penalty was back in? Correct, Your Honor. That, in a nutshell, is where we are, Judge Wilkinson. I still have two minutes left, but unless the Court has additional questions of me, I'm happy to waive my two minutes and thirty-nine seconds. I have a question. Yes, sir. The district judge made the statement that Jackson's voluntary intoxication would not have been admissible to reduce the homicide from murder to manslaughter. That's correct. Do you agree with that statement? I do, Your Honor. Could you explain that to me, please? Yes, Your Honor. If you look at this Court's jurisprudence, most recently the Fleming case, voluntary intoxication is not going to be sufficient to negate malice. It's just not. Malice is what separates Malice is an element of second degree murder and first degree murder. What separates first and second degree is premeditation, specific intent to kill that formed at a particular time. But malice, I think, doesn't require a specific intent to kill. It doesn't require an intent to do anything other than act in a reckless manner. So I would agree with Judge Wilson's analysis of that. Now, had the case gone to trial, would manslaughter have been an option for the jury? In my opinion, in these facts, the answer is no. No, Judge Davis. Why do you say that it would not have been an option for the jury? Because there has to be, in order for there to be, to instruct a jury on a particular element or a particular degree of killing, there has to be evidence to support it. And in this case, there's no evidence to support a manslaughter charge. He would say that the obscene exposure of what he thought was his daughter and the turn and the sneer to him would have provided the provocation. That his actions, though, after he realized it wasn't his daughter, would sort of tend to negate that. But he'd already fired. He'd gone out and fired and then determined who the girl was. But it's important, though, Judge Traxler, to remember, in this case, each of these victims were shot twice, according to Christina Floyd and according to the autopsy on Mr. Davis. So he shoots each of these people twice. I don't know why you keep looking at me. Most district judges, I won't say most, many district judges, just like many state trial judges, would, when a defense asks for manslaughter instruction in a first degree murder case, will give the jury that option unless there's absolutely no evidence whatsoever. In other words, I think the law, I think you agree, that the law favors erring on the side of giving manslaughter to the jury when the defense earnestly wants it. And conversely, when the defense doesn't want it at all, I mean, there's some defense lawyers who are going for the acquittal and they don't want the jury to have the option of the lesser included, right? I mean, you've seen that. It's been around a long time. So I'm a little surprised, even though you keep looking at me. I don't know why you keep looking at me about manslaughter. I didn't raise manslaughter. I raised second degree murder. But the point is, the fact is, I think a lot of district judges on these facts largely for the reasons Judge Traxler just mentioned, but for other reasons as well, because the rock throwing was after the shooting. He didn't shoot anybody, if I understand the record, after he was throwing rocks over the ledge and that kind of nonsense. Judge Wilkinson's right. Horrible facts. Absolutely horrible facts. But if you're a 60-year-old guy looking at life and death maybe, is the jury really going to give this guy death? And how long is that going to take? I don't know. But I'm not arguing for manslaughter. I'm really focused on whether he was entitled to make a decision about whether, if he's going to get life anyway, why not go to trial? Your Honor, I guess that the and my time is up if I answer the court's question. Is that agreeable? That is not the way. His allegation in his petition is very pointed. It's a pro se petition. He's not trained in the law. I understand that, but that's all I have to go on is the thrust of his argument. Because Judge Wilson didn't give you a chance to respond. Look, we understand you're here. You didn't ask to be here. You would much rather have been able to file a considered, deliberate response to the petition before the district court and have the district court have the benefit of your argument before the case came up to us. I understand that. Certainly, Judge Epps, that would have been my preference. But I have the record that I have and I'm here arguing for the court in good faith. I believe that Judge Wilson's opinion is defensible in this court and we would ask the court to affirm it. Thank you, Mr. Giorno. Littlehill? Briefly, Your Honor. To respond to Judge Wilkinson's point, defendants, I agree, don't like to gamble with their fate. However, in this case and in other cases, when you say gamble, that means you're making a choice to make a decision. And as Judge Davis pointed out in this case, our claim is that he was just the defendant was fundamentally unable to make that decision. Yes, but the point on the prejudice point, you keep coming back to this defendant, this defendant, but the point on the prejudice is an objective one and it's whether an objectively reasonable person would have wanted to gamble on this. Would he have wanted to gamble with his life on these facts? And would what lawyer wants to be burdened with the fact that he's brought somebody to trial, that he's urged somebody to go to trial and that the person gambled with his life and lost? And what, you know, a person's life is worth everything to them and why would an objectively reasonable person want to take, I think, this significant chance of a death penalty being imposed? You know, I certainly want, I'd be relieved over the fact, maybe I'm not an objectively reasonable person, but I'd be relieved at the fact that I had escaped with my life given what transpired on that parkway. Yes, Your Honor, and I'll go back to my earlier statement and that's, if you accept that premise, then Hill is out of the door for you. You're not going to consider Hill. But we ask you to consider the chronic line of cases and under the effective denial of counsel cases, and there are a number, Tolliver, Hammond, Villa, and so on, those cases the court has said, look, this defendant might have received a good deal. The evidence is overwhelming. He faces a bad result if he would have gone to trial, but that doesn't matter. What matters is whether he was in... Has Hill v. Lockhart been overruled or undermined in any way? Oh, no, Your Honor. In the Misali case, however, in 2010, this court noted that Hill isn't the only way a defendant may establish Sixth Amendment relief. There are a variety of ways he may do so. It's the way in which the prejudiced inquiry is answered to present cases of buyer's remorse and trying to fathom out what this person wants and what he didn't want. Your Honor, it's our position that Hill arises in most cases because most cases don't involve a factual scenario where trial counsel never advises his client about the only possible defense in his case. Now, thankfully, that's the case, and thankfully, chronic cases are rare. Thankfully, nine times out of ten, if not more, the adversary process works and it's effective, and therefore, when you bring a claim saying, well, my counsel's ineffective because he failed to cross examine someone, well, you can just point to the record and say, well, that didn't matter. But what was wrong with the advice that counsel gave? Counsel said the fact that, you know, you can't... that a voluntary intoxication is not going to be a defense to a specific intent crime. Your Honor, that's not the advice that he gave. If I could direct your attention to this case, he says I would have gone to trial, and this is Mr. Jackson, in lieu of pleading guilty had counsel correctly advised me that mental impairment was a defense to demonstrate I did not have the mens rea to commit first-degree murder. That's what this case is about. He asked his client at the only point in time at which he needed help to evaluate his options of the plea. So I'm a little surprised you haven't mentioned Padilla. Well, Your Honor... Isn't that the gloss on Hill that you're relying on? Well, I think so, Your Honor. And in Padilla, the court said, look, even when it's a collateral consequence, these things are important to defendants. And we can tell they're important to defendants because defendants ask about them. And even objectively, we can look in the record and say, you know, this guy asked his counsel and not only did he ask his counsel, he told his doctor. And not only did he tell his doctor, but he told the district court and open court that he had been treated for narcotics. And we don't even know what the defense lawyer's response to any of this is, do we? From the record, the response was, you cannot present such a defense on trial, period. Well, that's Jackson's account of what the response... We haven't heard from the defense lawyer. Well, I think if you're saying that there should have been a hearing in this case, I fully agree with you, Your Honor. However, as I mentioned early and perhaps inartfully, JA-134 is clear to me that this supports Jackson's claim. But we don't know what... I'm sorry, but we don't know in a hearing context what the defense counsel will come in and say, oh, no, here are my notes. We had lots of discussions, yada, yada, yada. Yes, Your Honor. But I would, again, point you back to page 130 of the JA. Which is fair enough. These discussions were for plea negotiations. We're trying to make this into a performance case and indicate that all we need to ask in these cases is a question of performance. But, you know, the Supreme Court has said in these ineffective assistance of counsel claims, you go to the prejudice inquiry first. And there you do ask whether things are a good deal. And Padilla, for example, still continues that objective test. And it's very clear, Padilla, that an objective test still governs. But, you know, what you've tried to do, I don't blame you for trying to do it. It's a good strategy. But you've tried to make this whole case into a performance case. And to try to say that Padilla in some ways, you know, undermines Hill v. Lockhart, I don't read the case that way at all. Oh, no, Your Honor. I don't think it undermines it at all either. I think there are two parallel tracks of ineffective assistance cases. And Tolliver is still good law in this court. Strickland, anything that came after that, Hill, Padilla, nothing affected that decision. And in that decision, this court did say that whether or not he received a good deal simply doesn't matter. Now, in this other line of cases, and let me briefly address Padilla again. It doesn't matter, but whether an objectively reasonable person would have wanted to go to trial does matter. Padilla asked whether the decision would have been rational. Now, the citation for that decision is a 2000 case called Roe v. Flores-Ortega. And in that case, the Supreme Court asked whether the failure to file an appeal was ineffective assistance. And in that case, Padilla emphatically preserved that objective test. Yes, Your Honor. But that citation, the court and Flores-Ortega looked at two things. One, it asked whether it was rational to want to file appeal. And two, it asked whether this particular defendant expressed such an interest. And in cases such as Mooney and Arkansas, this court has also looked at that interest-based test. So we're going to go to the citation rather than to what the Supreme Court actually said. Well, I think that citation in Padilla was rhetorical flourish in our view, Your Honor. And it said nothing to disagree with that earlier ruling. But I think fundamentally, this is a chronic case. And this isn't necessarily, I think we argue that it is, but this court need not find that it's a Hill-based case. In this case, my client was simply unable to make an informed decision. And under the Constitution, he has, he alone has the ability to make the decision whether to proceed to trial or whether to plead guilty. Now, Your Honor, Judge Wilkinson, even if the facts are horrific, and even if my client faced zero chance of winning a trial, trial counsel still had the obligation to discuss his legal defenses and his possible options with him. And in this case, that just did not happen. He may well have saved the man's life, and we're going to ring him up for ineffective assistance of counsel. Well, Your Honor, that's exactly what this court did in the O'Toole case. So, in other words, for saving a person's life, you get tarred with the ineffective assistance of counsel. Your Honor, I think... Of course, if he'd gone to trial and the results had been adverse, even to the extent of, certainly to the extent of a death penalty, but even to the extent of a life sentence, we would have been here with the inevitable 222-55 ineffectiveness claims. You know, the problem with these claims is lawyers lose no matter what they do. Your Honor, I submit in this case it would have been easy for, at an evidentiary hearing, in your hypothetical, for trial counsel to merely point to a memorandum that says, this is a legal possibility but it's a bad idea, and explain why. That never happened in this case. And the reason, the fundamental reason why there's prejudice in this case is that giving up the right to trial is a very, very, very serious decision. That's every guilty plea. I mean, you know, that would undermine every guilty plea, that same comment. Well, no, Your Honor. I think that making the decision to plead guilty has to be a counseled one. And that's the Supreme Court's language. That's the performance prong we're talking about. Yes, Your Honor. But you've tried to make the whole thing into a performance case. Your Honor, under the... We've been round and round and over and over. Yes, Your Honor. In the chronic line of cases, however, in this Court's cases, it says that where there's this type of structural breakdown, where there's a lack of advice at a critical stage of proceedings, the adversary process itself breaks down and there should be a presumption of prejudice. If there are no more questions, we ask the Court reverse the judgment of the District Court. Thank you, Mr. Littlehill. Thank you. We'll come down and greet counsel and then go into our next case. Thank you.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Andre M. Davis